UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PACIFIC INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NIDEC MOTOR CORPORATION,<br><br>Defendant. | Case No. 2:14-cv-01533-APG-NJK<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 23) |

This case arises out of a fire that took place in July 2012 at a theater at Caesar's Palace in Las Vegas. ECF No. 7 at 1. Plaintiff Pacific Indemnity Company's insured owns the show that was performing in the theater and the insured suffered losses when the fire damaged the theater and disrupted the performance of future shows. *Id.* at 1, 3. Pacific contends the fire was caused by a defect in a Re-Fan II Turbo fan or its component parts. *Id.* at 3, 5. Defendant Reel EFX, Inc. manufactured the fan. *Id.* at 3. Defendant Nidec manufactured the fan motor. *Id.* at 3. Pacific sued Reel EFX and Nidec for strict products liability, alleging that the fan motor was defective. *Id.* at 9. Pacific also asserts claims for negligence and breach of implied warranty. *Id.* at 6-9. All claims and cross-claims relating to Reel EFX have been resolved. *See* ECF No. 35. The only claims that remain are Pacific's claims against Nidec.

Under the scheduling order, the parties had until April 20, 2015 to disclose experts. ECF No. 18 at 2. On April 17, 2015, the parties stipulated to extend the discovery deadlines for sixty days while the parties pursued settlement discussions. ECF No. 20. They proposed to extend the expert disclosure deadline to June 19, 2015. *Id.* at 3. The Magistrate Judge denied without prejudice the parties' stipulation to extend the initial expert disclosure deadline because the parties failed to address whether there was excusable neglect for failing to move to extend the deadline earlier. ECF No. 21. The parties did not file another stipulation or motion to extend the deadline. Thus, April 20 remained the date for initial expert disclosures.

On June 19, 2015, Pacific designated Erik Christiansen as a retained expert and Amy Saenz and "Clark County Fire Department Investigators with designation CC906 and CC902" as non-retained experts. ECF No. 23-1 at 3. Pacific provided an expert report prepared by Christiansen. *Id.* at 8-20. In his report, Christiansen stated that the fan motor was severely damaged by heat and fire, that the bearings no longer would spin freely, and that heat patterns observed on the motor's interior were "consistent with internal failure, as opposed to external fire attack." *Id.* at 10. Christiansen also noted a thermal cut-off switch was in the closed position. *Id.* at 13-15. Christiansen opined that:

> [b]ased on the damage to the fan, the most likely cause of the fire was a failure of the fan motor. The motor shows internal damage consistent with an overheating event. Additionally, the thermal switch that protects the motor from overheating was found to be failed closed, and therefore would not disconnect power to the fan motor as intended during an over-temperature situation.

*Id.* at 15.[1]

Pacific also provided a report from the Clark County Fire Department. ECF No. 23-1 at 21-30. The investigators who prepared the report are identified only as CC906 and CC902. *Id.* at 25. According to that report, the fire occurred while the theater was empty. *Id.* at 26. The investigators found burned chairs and "what looked like fan parts lying on the chairs." *Id.* The investigators reviewed video footage but the video did not have a direct view of the fire. *Id.* Instead, they could see from reflections where the fire had occurred. *Id.* The investigators examined where the fan had been suspended from the ceiling, where they found "small bits of copper splattered on the metal supports" and "[t]he yoke that supported the fan housing had heavy

---

[1] In a separate affidavit, Christiansen stated:

> [t]o a reasonable degree of engineering and scientific certainty, the most likely cause of the fire was a failure of the fan motor. The motor shows internal damage consistent with an overheating event. Additionally, the thermal switch that protects the motor from overheating was found to be failed closed, and therefore would not disconnect power to the fan motor as intended during an over-temperature situation. This malfunction of the thermal switch caused the overheating of the motor to result in the subject fire.

ECF No. 26 at 4.

signs of oxidation from heat and the metal screws that held the housing into the yolk were still there, covered with melted plastic." *Id.* The fan motor showed "signs of heavy fire damage to the motor and metal parts." *Id.* "The fan motor would not spin" when the investigator tried to turn it. *Id.* The investigators also examined the light board and noticed that dimmer #48 had been tripped, while all other dimmers remained in the on position. *Id.* A stage hand informed the investigators that an electrician had wired the fan into dimmer switch #48. *Id.* at 26. The investigators concluded that the "area of origin is on or in the fan motor on the east side of the theater." *Id.* at 27. They further concluded that the "cause of the fire is most probably [an] overheating/failure of the electrical motor." *Id.*

The day before Pacific designated its initial experts, Nidec disclosed its rebuttal expert, Kenneth Theis, even though there was no expert to rebut at that time. ECF No. 23-2. According to Theis, the motor's rotor would not rotate, but he concluded it was "the result of external heat damage to the bearings and loss of an end shield, not internal heat generated by the motor itself." *Id.* at 9-10. Theis noted that the damage was more pronounced on one side of the motor and the opposite side "showed no internal heating." *Id.* at 10. He also concluded that the electrical resistance measurements of the motor's windings were consistent with original factory specifications and there was no other evidence of internal heat consistent with being a fire source. *Id.* at 12. Theis thus concluded:

> [t]he resistance measurements and lack of internal shorting of the coils of the subject motor rules out heat generation internal to the [Nidec] motor. There is no other objective evidence or condition of the motor that would suggest it was the cause of the fire.

*Id.* at 12. Theis also concluded the motor had no defects in its design or manufacture, and the "[d]amage to the subject [Nidec] motor was not the cause of the fire, but the result of fire and heat after the fire began external to the motor." *Id.* at 13. He bases his conclusion on the fact that there was "no heat . . . generated internal to the [Nidec] motor sufficient to compromise insulation or the other internal components." *Id.* Instead, he suggests other components of the fan could have been the source of the fire. *Id.*

Nidec noticed Christiansen's deposition for August 17, 2015. ECF No. 25 at 159-60. That date would have fallen within the time remaining in the discovery period. ECF Nos. 20, 21. This deposition never took place.

Nidec moves for summary judgment, arguing that Pacific did not timely disclose any experts and thus Pacific will not be able to show the fan motor was defective or that it caused the fire. Nidec argues that even if the court allows Pacific's untimely expert disclosures, Pacific's designated expert does not opine the motor was defective or caused the fire and the other identified experts did not provide reports.

Pacific responds by arguing the late designation was harmless because the parties had agreed to extend the deadlines while they pursued settlement efforts, Nidec designated its own expert only one day prior, and Nidec was already aware of most of the information disclosed in Pacific's expert designation. Pacific also contends Nidec had the opportunity to depose Christiansen within the discovery period and had scheduled a deposition, but then decided not to proceed with it. Pacific acknowledges the parties should have sought relief from the court regarding the deadlines, but instead the parties resumed settlement talks.

As to whether there is evidence the motor was defective, Pacific argues that it does not necessarily need an expert because the mere fact of the fire shows a defect. Pacific also asserts both the fire investigators and Christiansen opine that the fire started in the motor. Finally, Pacific contends that causation is a question of fact for the jury.

## II. ANALYSIS

### A. Failure to Timely Disclose Expert

A party must disclose the identity of any expert witness it intends to use at trial and must provide the expert's written report. Fed. R. Civ. P. 26(a)(2)(A)-(B). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

When a party fails to do so, that party is "not allowed to use the information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party facing the sanction bears the burden of showing substantial

justification or harmlessness. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). "Harmlessness may be established if a disclosure is made sufficiently before the discovery cutoff to enable the movant to depose the expert and challenge his expert report." *Boliba v. Camping World, Inc.*, No. 2:14-CV-01840-JAD-NJK, 2015 WL 3916775, at *2 (D. Nev. June 25, 2015) (citing *Cruz v. Durbin*, No. 2:11-cv-00342-LDG-VCF, 2014 WL 4182334, at *3 (D. Nev. Aug. 21, 2014) and *Amos v. Makita U.S.A., Inc.*, No. 2:09-cv-01304-GMN-RJJ, 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011)).

However, even if a party cannot show harmlessness or substantial justification, I am not required to exclude evidence as a sanction. *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011). Other potential sanctions under Rule 37(c)(1) include payment of reasonable expenses incurred and any other "appropriate" sanction, including those listed in Rule 37(b)(2)(A)(i)-(vi). I have wide discretion in determining the appropriate sanction. *See Yeti*, 259 F.3d at 1106. In making that determination, I consider: (1) "the public's interest in expeditious resolution of litigation;" (2) "the court's need to manage its docket;" (3) the risk of prejudice to the party seeking sanctions; (4) "the public policy favoring disposition of cases on their merits;" and (5) "the availability of less drastic sanctions." *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). When excluding evidence would "amount[] to dismissal of a claim, the district court [is] required to consider whether the noncompliance involved willfulness, fault, or bad faith." *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

Pacific concedes it failed to timely disclose its expert. That failure was not completely harmless because Nidec expended resources filing a summary judgment motion based on the fact that Pacific had not timely designated any experts. However, the untimely disclosure was not sufficiently prejudicial to Nidec to justify excluding Christiansen; that remedy is too harsh under the circumstances. Doing so would, by Nidec's own argument, amount to dismissal of Pacific's claims. There is no evidence of willfulness or bad faith to support case-ending sanctions. Moreover, Nidec was already aware of Christiansen's identity because he was present when the parties and their respective experts examined and tested the fan in September 2013. ECF No. 23-2

at 9. The parties were attempting to settle this matter without the need to expend resources on costly expert reports but were unable to do so by the disclosure deadline. Although the parties should have obtained court approval of an extended deadline, Nidec still had time during the discovery period to depose Christiansen. Indeed, Nidec had noticed his deposition but, for reasons unknown, cancelled it. Additionally, Nidec did not disclose Theis by the initial expert disclosure deadline even though his report reads more like an initial expert report than a rebuttal report and there was nothing for Theis to rebut at the time his report was disclosed. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (stating that rebuttal evidence is "evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)").

Although I decline to exclude Christiansen, the late disclosure is sanctionable. In an effort to mitigate any prejudice to Nidec, I will extend the discovery deadline only to allow Nidec to depose Christiansen if it chooses to do so and for Theis to update his rebuttal report in response. Because Nidec could have deposed Christiansen during the discovery period, I will not award Nidec fees and costs associated with Christiansen's deposition if Nidec opts to depose him. However, I will award Nidec its reasonable attorney's fees and costs for preparing the summary judgment motion because Nidec would not have had a basis to make that motion if Pacific had timely disclosed its initial expert designations.

**B.  Summary Judgment**

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

To establish a strict products liability claim, "a plaintiff must show that: 1) the product had a defect which rendered it unreasonably dangerous, 2) the defect existed at the time the product left the manufacturer, and 3) the defect caused the plaintiff's injury." *Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 571 (Nev. 1992). A product is defective if it is "dangerous because [it] fail[s] to perform in the manner reasonably to be expected in light of [its] nature and intended function." *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138 (Nev. 1970) (quotation omitted).

In certain cases, "proof of an unexpected, dangerous malfunction may suffice to establish a prima facie case for the plaintiff of the existence of a product defect." *Stackiewicz v. Nissan Motor Corp. in U.S.A.*, 686 P.2d 925, 928 (Nev. 1984). Under the right circumstances, a plaintiff need not show a specific defect in the product because "in the field of products liability the focus is on the product and not necessarily on its component parts." *Id.* (quotation omitted). "When there is evidence of some dangerous condition, the factfinder can find, where other identifiable causes are absent, that the mere evidence of a malfunction is sufficient evidence of a defect." *Id.* (quotation omitted).

As to causation, "[t]he concept of strict liability does not prove causation, nor does it trace the cause to the defendant." *Ginnis*, 470 P.2d at 138 (quotation omitted). Rather, the plaintiff "must still establish that his injury was caused by a defect in the product, and that such defect existed when the product left the hands of the defendant." *Id.* (quotation omitted). To establish proximate causation, "it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Yamaha Motor Co., U.S.A. v. Arnoult*, 955 P.2d 661, 664-65 (Nev. 1998) (quotation omitted). "Proximate causation is generally an issue of fact for the jury to resolve." *Id.*

Christiansen opined that the fan motor was defective because "the thermal switch that protects the motor from overheating was found to be failed closed, and therefore would not disconnect power to the fan motor as intended during an over-temperature situation." ECF No. 26 at 4. He also opined that that this failure caused the fire because the "malfunction of the thermal switch caused the overheating of the motor to result in the subject fire." *Id.*; *see also* ECF No. 23-1 at 15. There is no evidence that the fan motor was previously damaged or repaired. A reasonable jury thus could find the fan motor was defective, the defect existed when the motor left Nidec's control, and the motor overheated and started the fire after the thermal switch failed.

I therefore deny Nidec's summary judgment motion with respect to Pacific's strict products liability claim. Nidec's motion also sought summary judgment on Pacific's negligence and breach of warranty claims based on the same proximate cause argument. Because a reasonable jury could find a defect in the motor proximately caused the fire, I deny Nidec's motion as to Pacific's other claims as well.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Nidec Motor Corporation's motion for summary judgment **(ECF No. 23) is DENIED**.

IT IS FURTHER ORDERED that discovery is reopened for 30 days only to allow defendant Nidec Motor Corporation to depose expert Erik Christiansen if it chooses to do so and to update Kenneth Theis's rebuttal expert report in response.

IT IS FURTHER ORDERED that plaintiff Pacific Indemnity Company must pay defendant Nidec Motor Corporation's reasonable attorney's fees and costs incurred in having to bring the motion for summary judgment. The parties must meet and confer regarding the amount of those fees and costs. If the parties are unable to reach an agreement, defendant Nidec Motor Corporation may file a motion for attorney's fees.

/ / / /

/ / / /

/ / / /

IT IS FURTHER ORDERED that the proposed joint pretrial order is due 60 days from the date of this order.

DATED this 25th day of August, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE